UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x

THEODORE SIMPSON,

                   Plaintiff,

                -against-

P.A. RODAS, GREEN HAVEN C.F.; P.A. BEN
OAKES, SOUTH PORT C.F.; C. FELKER, NURSE
ADMINISTRATOR FOR SOUTH PORT C.F.;
M.D. JIRI BEM, FOR UPSTATE HOSPITAL;
M.D. VALCRIAN, FOR ALBANY MEDICAL;
M.D. H. SILVERBERG, FOR GREAT MEADOW
C.F.; M.D. D. KARANDY, FOR GREAT MEADOW
C.F.; J. COLLINS, NURSE ADMINISTRATOR FOR
GREAT MEADOW C.F.; HEAD MEDICAL
DOCTOR DR. LESTER WRIGHT, FOR D.O.C.S.;
RITA GRINBERG, FOR D.O.C.S. MEDICAL
REGIONAL OFFICE,

                   Defendants.

-------------------------------------------------------------------x

**OPINION AND ORDER**

No. 10-CV-6670 (CS)

Appearances:

Theodore Simpson
Pro Se *Plaintiff*

Steven N. Schulman
Office of the Attorney General, New York State
New York, New York
*Counsel for State Defendants*

Michael E. Catalinotto, Jr., Esq.
Maynard, O'Connor, Smith & Catalinotto, LLP
Saugerties, New York
*Counsel for Defendant Dr. Valerian*

Seibel, J.

      Before the Court are four motions: (1) a Motion to Dismiss and Change Venue brought

by Defendants Physician Assistant ("P.A.") Byron Rodas, P.A. Benjamin Oakes, Nurse

Administrator ("N.A.") C. Felker, Dr. Howard E. Silverberg, Dr. David Karandy, N.A. Janet

Collins, the New York State Department of Corrections and Community Supervision

("DOCCS") Medical Director Dr. Lester Wright, and Regional Health Services Administrator

Rita Grinbergs,[1] all current or former employees of DOCCS, formerly the Department of

Correctional Services ("DOCS"), and Dr. Jiri Bem, a private physician entitled to representation

under New York Corrections Law § 24-a (collectively, the "State Defendants"), (Doc. 19); (2) a

Motion to Dismiss and Change Venue brought by Defendant Dr. Valerian,[2] (Doc. 45); (3)

Plaintiff's Motion to Strike Respondent's Motion in Furtherance [sic] Support, (Doc. 38); and (4)

Plaintiff's Motion for Preliminary Injunction, Temporary Restraining Order, and Assignment of

Counsel, (Doc. 59).  For the following reasons, the Motions to Dismiss are GRANTED IN

PART and DENIED IN PART, Plaintiff's Motion to Strike is DENIED,[3] and Plaintiff's Motion

for Preliminary Injunction and Temporary Restraining Order is DENIED.  The case is hereby

transferred to the United States District Court for the Northern District of New York (the

"Northern District"), and Plaintiff's request for counsel is denied without prejudice to renewal in

the transferee District.

---

[1] Plaintiff refers to this Defendant as "Grinsberg" in his Amended Complaint ("AC"), (Doc. 5), and Defendants refer to her as "Grinbergs." For purposes of this Opinion, I spell this name as Defendants do.

[2] Plaintiff does not spell Defendant Valerian's name consistently. Defendant's papers reflect that it should be spelled "Valerian," but Plaintiff refers to this Defendant as "Vigleria" and "Valcrian" in his AC. For purposes of this Opinion, I also spell this name as Defendant does.

[3] Plaintiff seeks to strike the State Defendants' Reply Memorandum of Law in Further Support of Motions to Dismiss and Change Venue (the "Reply Memorandum"), (Doc. 27), which Plaintiff believes "fails to comply with the Rules of this Court" because "Defendant[s] never indicated that additional motion(s) in support would follow the **Original** motion to dismiss," (Doc. 38 at 2 (emphasis in original)). Plaintiff's argument fails for a couple reasons. First, the State Defendants' Reply Memorandum is not an additional motion as Plaintiff contends. Rather, it is merely a permitted reply that reiterates the arguments set forth in the State Defendants' opening memorandum, (Doc. 20). Second, Federal Rule of Civil Procedure 12(f) provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter," Fed. R. Civ. P. 12(f), but a reply memorandum is not a "pleading," *see Pakter v. N.Y.C. Dep't of Educ.*, No. 08-CV-7673, 2010 WL 1141128, at *4 (S.D.N.Y. Mar. 22, 2010); *Rochester-Genesee Reg'l Transp. Auth. v. Hynes-Cherin*, 531 F. Supp. 2d 494, 519 n.17 (W.D.N.Y. 2008) (collecting cases); *see also* Fed. R. Civ. P. 7 (distinguishing "Pleadings" from "Motions and Other Papers"). In any event, the Reply Memorandum did not affect the Court's resolution of the pending Motions to Dismiss, and it will have no impact on this case moving forward.

I.    **BACKGROUND**

The following facts are taken from the AC and are accepted as true for purposes of this

Opinion.  Plaintiff was incarcerated at Green Haven Correctional Facility ("Green Haven") from

2006 until on or about December 2008.  (AC II.D.)  P.A. Rodas was Plaintiff's primary care

provider at Green Haven, where Plaintiff experienced irregular bowel movements and severe

stomach pains.  (*Id.*)  When Plaintiff complained to Rodas, he was given gas tablets, and

although Plaintiff asked for a colon exam on several occasions, it was not ordered.  (*Id.*)  In April

2008, after a doctor at Green Haven discovered that Plaintiff suffered from a stool blockage, he

was rushed to Mount Vernon Hospital for treatment.  (*Id.*)  Plaintiff was diagnosed with

diverticulosis, a disease of the intestines, at Mount Vernon Hospital, but no one there informed

him of this diagnosis.  (*Id.*)

Plaintiff was transferred to Southport Correctional Facility ("Southport") on or about

December 2008.  (*Id.* ¶ 1.)  At Southport, Plaintiff made requests for pain medication, to be seen

by a specialist, and for a colonoscopy, but P.A. Oakes denied these requests.  (*Id.* ¶ 4.)  Plaintiff

began to complain in writing to N.A. Felker about these denials and the care he was receiving

from Oakes.  (*Id.* ¶ 6.)  In or about June 2008, Plaintiff was admitted to St. Joseph Hospital in

Syracuse, New York for one week due to complications with his digestive system, and he was

given medications to manage his pain and antibiotics for infection.  (*Id.* ¶ 8.)  Felker visited

Plaintiff at the hospital and looked at his chart to evaluate the extent of Plaintiff's condition.  (*Id.*

¶ 9.)  Plaintiff returned to Southport on or about June 26, 2008, and Oakes administered

medication and antibiotics to Plaintiff for one week.  (*Id.* ¶ 10.)  Plaintiff sought a second

opinion concerning his condition because he believed that Oakes and Felker were ignoring his

complaints and concerns, and in or about July 2008, Plaintiff was sent to Elmira Correctional

Facility ("Elmira") to see a specialist. (*Id.* ¶¶ 11-12.) While at Elmira, Plaintiff lodged various complaints about his treatment at Southport, but no action was taken or relief granted. (*Id.* ¶¶ 14-15.)

In or about September 2008, Plaintiff was transferred to the Auburn Correctional Facility ("Auburn"). (*Id.* ¶ 16.) The health care providers at Auburn determined that Plaintiff's condition had worsened since his visit to Mount Vernon Hospital in April 2008, and they completed a colon exam on Plaintiff. (*Id.*) In October and November 2008, Plaintiff filed grievances concerning his condition, the pain he was suffering, and what Plaintiff believed to be a denial of medical treatment at Auburn. (*Id.* ¶¶ 18-19.) In or about December 2008, Plaintiff was transferred back to Southport, where he was again under the care of Oakes and Felker. (*Id.* ¶ 20.) He continued to experience pain from the diverticulosis, and visited sick call to be evaluated. (*Id.* ¶ 21.) Plaintiff also continued to complain about his condition and to file complaints and grievance letters to Felker concerning his condition and alleged lack of treatment. (*Id.* ¶¶ 21-22.) Eventually, in or about April 2009, Plaintiff was seen by Dr. Bem, a specialist, who informed the Plaintiff that surgery was necessary. (*Id.* ¶¶ 23-24.) Plaintiff agreed to undergo the procedure. (*Id.* ¶ 25.)

On or about June 12, 2009, Plaintiff was admitted to the Upstate Hospital ("Upstate") in Syracuse, New York for surgery, which Bem performed. (*Id.* ¶ 28.) In the recovery room after the surgery, Plaintiff complained to the nurses that he was experiencing pain in his side. (*Id.* ¶ 29.) The resident nurse found a blood stain near Plaintiff's back, which indicated that Plaintiff was bleeding internally. (*Id.*) The next day, another nurse found a larger blood stain in the same area, and the resident doctor determined that Plaintiff had been bleeding internally for two days due to a failed vessel connection during the surgery. (*Id.* ¶ 30.) That same day, Plaintiff was

4

admitted for another surgery to stop the internal bleeding, and Plaintiff stomach was cut open during the procedure, which allegedly Plaintiff did not authorize. (*Id.* ¶¶ 31, 34.) On or about June 20, 2009, Plaintiff's stomach began to expand abnormally, and a doctor at Upstate determined that a tube that is used to relieve pressure and pain after surgery had been removed from Plaintiff's stomach without authorization and against normal practices. (*Id.* ¶¶ 35-36.) The tube was replaced that same day to relieve pressure in Plaintiff's stomach. (*Id.* ¶ 37.) On or about June 28, 2009, Plaintiff was released from Upstate, despite his objection, and was sent to the Auburn Special Housing Unit. (*Id.* ¶¶ 39-40.) The next day, Plaintiff was transferred back to Southport, and the admissions nurse who examined him noted that Plaintiff had an infection. (*Id.* ¶ 42.)

On or about July 20, 2009, Plaintiff was taken off the pain medication prescribed by the doctors at Upstate. (*Id.* ¶ 43.) He continued to file many letters and grievances with various people, including Southport's N.A. and DOCCS officials, regarding the medical care he was receiving. (*Id.* ¶¶ 44-45.) On or about July 26, 2009 and August 9, 2009, Plaintiff received letters from the N.A. and DOCCS, respectively, stating that there was nothing that they could do concerning Plaintiff's grievances and that the medical professionals had acted appropriately. (*Id.* ¶¶ 46-47.) On or about August 20, 2009, Plaintiff filed a letter with Dr. Wright, and received a return letter on or about September 2, 2009 stating that Wright had directed Rita Grinbergs to answer Plaintiff's complaints. (*Id.* ¶¶ 49-50.)

On or about September 19, 2009, Plaintiff was transferred to Great Meadow Correctional Facility ("Great Meadow") where he continued to complain about his medical condition, an infected wound, and the pain he was suffering. (*Id.* ¶¶ 52-53.) Plaintiff saw multiple health care providers between September 2009 and November 2009. (*Id.* ¶¶ 54-58.) At a September 26,

2009 sick call visit, Plaintiff presented with a hernia that had developed from his prior surgeries,

and a sick call nurse allegedly arranged for him to be seen by a doctor in March 2010, although

she did not assist him further than that. (*Id.* ¶ 54.)  On or about November 13, 2009, Dr.

Silverberg examined Plaintiff's hernia and told Plaintiff that he would be seen by a specialist at

Coxsackie Correctional Facility. (*Id.* ¶ 57.)  During a November 23, 2009 visit with Silverberg,

Plaintiff alleges that Silverberg walked out of the room without giving him the opportunity to

express his concerns about his pain, extreme weight loss, bleeding, and vomiting, (*id.* ¶ 58), so

he filed December 15, 2009 and December 17, 2009 grievances concerning the inadequate

medical care he had received from Silverberg and other health care providers at Great Meadow,

(*id.* ¶¶ 59, 61).

   Plaintiff alleges that the hernia developed because of what he considers to be malpractice

that occurred during his first two surgeries. (*Id.* at III ¶ 4.)  Although he complained about the

pain that the hernia caused him, Plaintiff alleges that he had to wait approximately six months –

during which time he suffered from pain, bleeding, weight loss, loss of appetite, and a distended

stomach – before he was approved for corrective surgery at Albany Medical Center. (*Id.* ¶¶ 5-6.)

Plaintiff alleges that during the hernia procedure performed by Dr. Valerian, Valerian placed

medical mesh in his stomach incorrectly, which led Plaintiff to suffer from more pain and

bleeding, additional weight loss, and sleeplessness. (*Id.* ¶ 8.)

   Between December 2009 and July 2010, Plaintiff sent several letters and grievances to

N.A. Collins, Dr. Karandy, Wright, and others about his condition and the lack of medical

attention he was receiving. (*Id.* at II.D ¶¶ 59, 61-69, 71-73, 75-78, 80, 84-85, 88.)  Plaintiff

alleges that he did not receive any response to his complaints, his complaints went generally

uninvestigated, or the responses that he received denied his medical requests. (*Id.* ¶¶ 61, 63, 65-

66, 68-69, 71, 75, 80, 89.)  Plaintiff also attempted to go to sick call and see doctors, but he allegedly did not receive the care that he thought he deserved. (*Id.* ¶¶ 76, 82-83, 87.)

## II.   DISCUSSION

### A.   Motion to Dismiss Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration, citations, and internal quotation marks omitted).  While Federal Rule of Civil Procedure 8 "marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.

In considering whether a complaint states a claim upon which relief can be granted, the court may "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then determine whether the remaining well-pleaded factual allegations, accepted as true, "plausibly give rise to an entitlement to relief." *Id.* at 679. Deciding whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of

misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)).

*Pro se* complaints are, however, held to less stringent standards than those drafted by lawyers. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (*per curiam*); *see McKeown v. N.Y. State Comm'n on Judicial Conduct*, 377 F. App'x 121, 122 (2d Cir. 2010) (summary order).[4]  In fact, pleadings of a *pro se* party should be read "'to raise the strongest arguments that they suggest.'" *Kevilly v. New York*, 410 F. App'x 371, 374 (2d Cir. 2010) (summary order) (quoting *Brownell v. Krom*, 446 F.3d 305, 310 (2d Cir. 2006)).  Even after *Iqbal*, in which the Supreme Court imposed heightened pleading standards for all complaints, *pro se* complaints are to be liberally construed. *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009).  Dismissal of a *pro se* complaint is nevertheless appropriate where a plaintiff has clearly failed to meet minimum pleading requirements. *See, e.g., Rodriguez v. Weprin*, 116 F.3d 62, 65 (2d Cir. 1997); *accord Honig v. Bloomberg*, No. 08-CV-541, 2008 WL 8181103, at *4 (S.D.N.Y. Dec. 8, 2008), *aff'd*, 334 F. App'x 452 (2d Cir. 2009).

When deciding a motion to dismiss, the Court's "review is limited to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d. Cir. 2007); *accord Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006).  "When matters outside the pleadings are presented in response to a 12(b)(6) motion, a district court must either exclude the additional material and decide the motion on the complaint alone or convert the motion to one for summary judgment . . . and afford all parties the

---

[4] Copies of all unpublished decisions cited herein will be sent to the *pro se* Plaintiff, along with a copy of this Order.

opportunity to present supporting material." *Friedl v. City of N.Y.*, 210 F.3d 79, 83 (2d Cir. 2000) (alteration and internal quotation marks omitted).

There are, however, some documents outside of the complaint that a court may consider on a motion to dismiss. For example, when deciding a motion to dismiss, the Court is entitled to consider:

> (1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents "integral" to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in [a] defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint, (4) public disclosure documents required by law to be, and that have been, filed with the Securities and Exchange Commission, and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence.

*Weiss v. Inc. Vill. of Sag Harbor*, 762 F. Supp. 2d 560, 567 (E.D.N.Y. 2011) (internal quotation marks omitted). If a document outside of the complaint is to form the basis for dismissal, however, "it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document," and "[i]t must also be clear that there exist no material disputed issues of fact regarding the relevance of the document." *Faulkner*, 463 F.3d at 134.

## B.   Eighth Amendment Medical Care Claim

"A convicted prisoner's claim of deliberate indifference to his medical needs by those overseeing his care . . . arises from the Eighth Amendment's prohibition of cruel and unusual punishment." *Caiozzo v. Koreman*, 581 F.3d 63, 69 (2d Cir. 2009) (internal quotation marks omitted); *see West v. Atkins*, 487 U.S. 42, 48 (1988) (Eighth Amendment claim of deliberate indifference actionable under 42 U.S.C. § 1983). While the Eighth Amendment imposes a duty upon prison officials to ensure that prisoners receive adequate medical care, *Farmer v. Brennan*, 511 U.S. 825, 832 (1994), "not every lapse in medical care is a constitutional wrong. Rather, 'a prison official violates the Eighth Amendment only when two requirements'" – one objective

and one subjective – "'are met.'" *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006)

(quoting *Farmer*, 511 U.S. at 834).

        1.   <u>Serious Medical Need</u>

First, to state an Eighth Amendment claim, the prisoner must allege that he was "actually

deprived of adequate medical care," as "the prison official's duty is only to provide reasonable

care," *id.* (citing *Farmer*, 511 U.S. at 844-47), and "that the alleged deprivation of medical

treatment [wa]s . . . sufficiently serious – that is, the prisoner must prove that his medical need

was a condition of urgency, one that may produce death, degeneration, or extreme pain,"

*Johnson v. Wright*, 412 F.3d 398, 403 (2d Cir. 2005) (internal quotation marks omitted); *see*

*Williams v. Raimo*, No. 10-CV-245, 2011 WL 6026115, at *3 (N.D.N.Y. July 22, 2011) ("no

distinct litmus test" for determining whether medical condition is "serious," but court may look

at non-exhaustive list of factors, including whether (1) impairment is one that reasonable doctor

would find important and worthy of treatment, (2) condition affects individual's daily life, and

(3) prisoner suffers from chronic and substantial pain).  Where the inadequacy alleged "is in the

medical treatment given, the seriousness inquiry is narrower. . . . [If] the prisoner is receiving on-

going treatment and the offending conduct is an unreasonable delay or interruption in that

treatment, the seriousness inquiry focuses on the challenged delay or interruption in treatment

rather than the prisoner's underlying medical condition alone." *Goris v. Breslin*, 402 F. App'x

582, 584-85 (2d Cir. 2010) (summary order) (internal citation and quotation marks omitted); *see*

*Smith v. Carpenter*, 316 F.3d 178, 186-87 (2d Cir. 2003) (among other things, court must look at

reasons for and effect of delay in treatment); *Ferguson v. Cai*, No. 11-CV-6181, 2012 WL

2865474, at *4 (S.D.N.Y. July 12, 2012) ("Where temporary delays or interruptions in the

provision of medical treatment have been found to satisfy the objective seriousness requirement

in this Circuit, they have involved either a needlessly prolonged period of delay, or a delay which caused extreme pain or exacerbated a serious illness.").

Plaintiff does not allege that Defendants failed to provide any medical treatment. Indeed, Plaintiff's AC details the ongoing medical treatment he has received. Plaintiff acknowledges that he was treated with various over-the-counter medications, taken to outside facilities for medical tests, procedures and surgeries, and given prescription medication to manage his pain. Plaintiff appears to assert, however, that there were delays or interruptions in his medical treatment that exacerbated his condition and caused him to suffer severe pain.

Plaintiff was first diagnosed with diverticulitis and subsequently with a hernia, and underwent three surgeries as a result of these medical conditions. He chronicles the pain that he endured as a result of these conditions and the surgeries. Plaintiff also alleges that Dr. Bem told him that "because of the extent of [his] condition and the failures to treat [him], it would be necessary for [Plaintiff] to undergo [his first] surgery as soon as possible," (AC II.D ¶ 24), and that he had to wait approximately six months at Great Meadow before he was approved for hernia surgery, (*id.* at III ¶ 5). Accordingly, the Court finds that Plaintiff has plausibly alleged that his medical needs were conditions of urgency that caused him much pain, *see., e.g.*, *Bourgoin v. Weir*, No. 10-CV-391, 2011 WL 4435695, at *7 (D. Conn. Sept. 23, 2011) (reasonable jurors could find that diverticulitis is "objectively serious medical condition"); *DeMartino v. Zenk*, No. 04-CV-3880, 2009 WL 2611308, at *9 (E.D.N.Y. Aug. 25, 2009) (digestive problems and hernia, among other ailments, sufficiently serious to satisfy objective component of Eighth Amendment claim), and that the delays plausibly exacerbated one or more of his conditions, *see Byng v. Wright*, No. 09-CV-9924, 2012 WL 967430, at *11 (S.D.N.Y. Mar. 20, 2012) (plaintiff's chronic pain during nine-month delay of operation for hernia was

11

sufficiently serious medical condition); *cf. Hathaway v. Coughlin*, 841 F.2d 48, 50-41 (2d Cir. 1988) (delay of over two years in arranging surgery to correct broken pins in hip could amount to deliberate indifference to serious medical needs).

2.     Deliberate Indifference

The second prong of an Eighth Amendment claim requires a prisoner to allege that the charged official acted with a sufficiently culpable state of mind. *Salahuddin*, 467 F.3d at 280-81; *see Farmer*, 511 U.S. at 835 ("[D]eliberate indifference entails something more than mere negligence . . . [but] it is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result."). The prisoner must allege that the charged official knew of and disregarded "'an excessive risk to inmate health or safety; the official must [have] both be[en] aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and . . . must also [have] draw[n] the inference.'" *Johnson*, 412 F.3d at 403 (quoting *Farmer*, 511 U.S. at 837); *see Phelps v. Kapnolas*, 308 F.3d 180, 186 (2d Cir. 2002) (*per curiam*) (equating "deliberate indifference" with criminal "recklessness").

"It is well-established that [neither] mere disagreement over the proper treatment," *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998), nor "[m]edical malpractice . . . become a constitutional violation merely because the victim is a prisoner," *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *see Sonds v. St. Barnabas Hosp. Corr. Health Servs.*, 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001) ("[D]isagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists or the timing of their intervention, are not adequate grounds for a Section 1983 claim. These issues implicate medical judgments and, at worst, negligence amounting to medical malpractice, but not the Eighth Amendment."); *cf.*

*Choice v. Blackwell,* No. 01-CV-1931, 2002 WL 32079466, at *7 (D.S.C. Mar. 29, 2002)

("[A]lthough the provision of medical care by prison officials is not discretionary, the type and

amount of medical treatment is discretionary."). Rather, to state an Eighth Amendment

deliberate indifference claim, an inmate "must demonstrate that the defendants act[ed] or fail[ed]

to act while actually aware of a substantial risk that serious inmate harm w[ould] result." *Farid*

*v. Ellen,* 593 F.3d 233, 248 (2d Cir. 2010) (alterations in original) (internal quotation marks

omitted). "[P]rison officials . . . may be found free from liability if they responded reasonably to

the risk, even if the harm ultimately was not averted." *Farmer,* 511 U.S. at 844.

  The allegations as to each Defendant's state of mind must, of course, be analyzed

separately.

     a.  P.A. Rodas

  Plaintiff asserts that the medical care he received from Rodas was insufficient. He

alleges that, in response to his complaints of stomach pain and irregular bowel movements,

Rodas treated him with gas tablets. But there is neither an indication in the AC that gas

medication and continued observation were an improper response to Plaintiff's symptoms, nor

that the need for a colon exam was indicated (other than by Plaintiff) while Rodas treated him.

Plaintiff acknowledges that when the pain became severe, he was treated in the emergency room,

which seems to indicate that staff members at Green Haven paid attention to Plaintiff's

condition. Accordingly, Plaintiff fails to allege that Rodas was deliberately indifferent to his

medical needs. Rather, Plaintiff disagrees with the medication and diagnostic techniques that

Rodas used, which is insufficient to state an Eighth Amendment deliberate indifference claim.

*See Sonds,* 151 F. Supp. 2d at 312; *Choice,* 2002 WL 32079466, at *7. Therefore, the claims

against Rodas must be dismissed.

b.    Dr. Jiri Bem

Plaintiff alleges that he suffered from internal bleeding from the surgery that Bem performed due to Bem's failure to connect a vessel properly.  Plaintiff, however, fails to allege sufficient facts to plausibly suggest that the complications were the result of deliberate indifference.  For all one can tell from the AC, the complication was a common one or at most the result of malpractice.  In addition, there are no facts to suggest that the complications were not addressed promptly.  In fact, Plaintiff acknowledges that he underwent another surgery to correct the problem only two days after the first surgery.  Because Plaintiff has not plausibly alleged that Bem was deliberately indifferent to his medical needs, the claims against Bem must also be dismissed.

c.    Dr. Valerian

Plaintiff asserts that Valerian essentially committed malpractice when he performed Plaintiff's hernia surgery because he placed the medical mesh improperly in Plaintiff's stomach, which led to pain, bleeding, and weight loss.  Plaintiff fails, however, to allege facts to suggest that this complication was the result of deliberate indifference.  Rather, as with Bem, the facts plausibly suggest perhaps malpractice but nothing more.  Nothing in Plaintiff's AC supports his claim that Valerian knowingly deprived Plaintiff of necessary medical care, and thus Plaintiff's claims against Valerian must also be dismissed.

d.    Dr. Lester Wright

Plaintiff asserts that he wrote three letters to Wright regarding his medical condition and the lack of medical attention that he received.  Plaintiff, however, fails to plead any direct participation by Wright in the alleged violations, that any policies that Wright promulgated allowed the continuance of constitutional violations, or that Wright was negligent in the

supervision of his subordinates.  There are no facts plausibly suggesting that Wright had any

personal involvement in Plaintiff's care, *see Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)

("It is well settled in this Circuit that personal involvement of defendants in alleged

constitutional deprivations is a prerequisite to an award of damages under § 1983.") (internal

quotation marks omitted), and writing to a supervisory official is insufficient to establish such

personal involvement, *see Shomo v. City of N.Y.*, 579 F.3d 176, 184 (2d Cir. 2009) (dismissing

Section 1983 claims against Department of Corrections officials for lack of personal involvement

when "[t]he only allegation pertaining to [those] defendants [wa]s that [the plaintiff] filed

complaints with [them]"); *see also Gonzalez v. Sarreck*, No. 08-CV-3661, 2011 WL 5051341, at

*15 (S.D.N.Y. Oct. 24, 2011) ("Both the Court of Appeals and numerous district courts in this

Circuit have held that receipt of letters or grievances is insufficient to impute personal

involvement."); *Rivera v. Pataki*, No. 04-CV-1286, 2005 WL 407710, at *22 (S.D.N.Y. Feb. 7,

2005) ("Simply because [the plaintiff] wrote to these supervisory officials complaining of

mistreatment does not justify holding them liable under § 1983."); *Johnson v. Wright*, 234 F.

Supp. 2d 352, 363 (S.D.N.Y. 2002) ("[T]o allow a mere letter to an official to impose

supervisory liability would permit an inmate to place liability on individuals who had no

authority over the situation complained of merely by sending letters.").[5]  The claims against

Wright must therefore be dismissed.

---

[5] Even if Wright in fact ignored Plaintiff's letters and grievances, there would still be no liability under Section 1983.  "The general rule is that an allegation that an official ignored a prisoner's letter of protest and request for an investigation of allegations made therein is insufficient to hold that official liable for the alleged violation." *Honig*, 2008 WL 8181103, at *5 (internal quotation marks omitted); *see, e.g., id.* ("[C]ourts have repeatedly found that the allegation that a supervisory official ignored a . . . letter protesting unconstitutional conduct is not itself sufficient to allege the personal involvement of the official so as to create liability under § 1983.") (second alteration in original) (internal quotation marks omitted); *Rivera v. Goord*, 119 F. Supp. 2d 327, 344 (S.D.N.Y. 2000) (allegations that inmate wrote to prison officials and was ignored insufficient to hold those officials liable under § 1983); *Garrido v. Coughlin*, 716 F. Supp. 98, 100 (S.D.N.Y. 1989) (Commissioner of DOCS not personally liable for ignoring plaintiff's letter of protest and request for investigation).  But in any event, the AC makes clear that Wright did not simply discard or ignore Plaintiff's letters, but rather had his staff address them.

e.    Rita Grinbergs

Plaintiff asserts that he received two pieces of correspondence from Grinbergs in response to letters he wrote to Wright. It seems from Grinbergs's responses, (*see* AC Exs. 9, 19), that she investigated the issues Plaintiff presented in his letters to Wright, reasonably concluded that Plaintiff's issues were being addressed, and suggested to Plaintiff that he should continue to use sick call to address his medical concerns and to send his grievances to the Inmate Grievance Program, as such complaints were not to be directed to DOCS's Central Office. Plaintiff fails to allege facts that suggest that Grinbergs's actions were deliberately indifferent in any way. For example, Plaintiff advances no facts plausibly suggesting that she did not receive the information she purported to have received from Plaintiff's medical providers or that she did not believe it. The claims against her, therefore, must be dismissed.

f.    Remaining State Defendants

As to the remaining State Defendants, the Court finds that Plaintiff alleges facts sufficient – perhaps barely so – to assert a claim of deliberate indifference to his complaints of pain. That said, portions of Plaintiff's medical records attached to the AC might possibly suggest drug-seeking behavior on his part. The AC certainly shows that Plaintiff received a great deal of medical attention. It may ultimately be determined that the remaining State Defendants appropriately considered Plaintiff's complaints of pain and concluded that the complaints were disproportionate to his conditions or otherwise had been properly addressed. But at this stage, without a full record, I cannot so conclude.

These remaining State Defendants are located in the Northern District (Silverberg, Karandy, and Collins) and the Western District of New York (Oakes and Felker), and the events giving rise to the claims against them occurred in each of those districts. Under 28 U.S.C. §

1404(a), "a district court may transfer any civil action to any other district or division where it might have been brought," and "[t]he determination whether to grant a change of venue requires a balancing of conveniences, which is left to the sound discretion of the district court." *Forjone v. California*, 425 F. App'x 73, 74 (2d Cir. 2011) (summary order) (internal quotation marks omitted).  The inquiry involves two steps:  first, the court must establish whether the case could have been filed in the transferee district, and second, the court must determine whether the convenience of the parties and the interests of justice favor transfer.  *See Fuji Photo Film Co. v. Lexar Media, Inc.*, 415 F. Supp. 2d 370, 373 (S.D.N.Y. 2006).

A court may consider a set of factors to assess whether a transfer of venue is appropriate, including

> (1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, [and] (7) the relative means of the parties.

*D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 106-07 (2d Cir. 2006) (alteration in original) (internal quotation marks omitted); *accord Morris v. Ernst & Young, LLP*, No. 12-CV-838, 2012 WL 3964744, at *3 (S.D.N.Y. Sept. 11, 2012).  While the movant "bears the burden of clearly establishing that these factors favor transfer," *Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 561 (S.D.N.Y. 2000), "[d]istrict courts have broad discretion in making determinations of convenience under Section 1404(a)[,] . . . notions of convenience and fairness are considered on a case-by-case basis," *D.H. Blair*, 462 F.3d at 106, and each factor need not be weighted equally, *Hoadley v. Moneygram Payment Sys., Inc.*, No. 08-CV-11192, 2009 WL 2001327, at *2 (S.D.N.Y. July 9, 2009).

As to the first step – whether the case could have been filed in the Northern District – a civil action may be brought, *inter alia*, in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." 28 U.S.C. § 1391(b)(1). "For the purposes of venue, state officers 'reside' in the district where they perform their official duties." *Crenshaw v. Syed*, 686 F. Supp. 2d 234, 237 (W.D.N.Y. 2010); *accord Holmes v. Grant*, No. 03-CV-3426, 2006 WL 851753, at *21 (S.D.N.Y. Mar. 31, 2006). Therefore, because three remaining Defendants reside in the Northern District and the other Defendants reside in the state, venue is proper there under the first prong of the test.

As to the second step – convenience and the interest of justice – although in the early stages of litigation, where little is known about the case, the plaintiff's choice of forum is "presumptively entitled to substantial deference," *Gross v. British Broad. Corp.*, 386 F.3d 224, 230 (2d Cir. 2004); *accord Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 101 (2d Cir. 2000) ("[P]laintiff's choice of forum is entitled to substantial deference and should only be disturbed if the factors favoring the alternative forum are compelling."), it should not be assigned dispositive weight in this case. Where, as here, the operative facts that remain in the case "have few meaningful connections to the plaintiff's chosen forum," "the importance of the plaintiff's choice . . . measurably diminishes." *Harris v. Brody*, 476 F. Supp. 2d 405, 406 (S.D.N.Y. 2007); *see Kreinberg v. Dow Chem. Co.*, 496 F. Supp. 2d 329, 330 (S.D.N.Y. 2007) (weight accorded plaintiff's choice of forum diminishes where operative facts have limited-to-no nexus to forum). Further, since three of the remaining Defendants and Plaintiff are located in the Northern District and the circumstances underlying many of the remaining claims occurred there, each of the other factors weigh in favor of transfer. Because (1) the Northern District would be more convenient for a majority of the remaining parties and witnesses, including Plaintiff who also resides there,

18

*see Capitol Records, LLC v. VideoEgg, Inc.*, 611 F. Supp. 2d 349, 366-67 (S.D.N.Y. 2009) (convenience of witnesses is typically regarded as "the most important factor in considering a § 1404(a) motion to transfer") (internal quotation marks omitted); (2) many of the relevant documents and sources of proof lie in that district; and (3) a large portion of the operative facts underlying the remaining claims arose in the Northern District, the adjudication of this case there will likely be more efficient. Further, there is a public interest in resolving claims where they arose. *See Sepanski v. Janiking, Inc.*, 822 F. Supp. 2d 309, 320 (W.D.N.Y. 2011); *Walker v. Jon Renau Collection, Inc.*, 423 F. Supp. 2d 115, 117 n.2 (S.D.N.Y. 2005). Therefore, in my discretion, I transfer this case to the Northern District. 28 U.S.C. § 1404(a).

### C.    Motion for Preliminary Injunction and Temporary Restraining Order

Plaintiff claims that Defendants have continued to be deliberately indifferent to his medical needs during his incarceration at Great Meadow, and Plaintiff seeks an order requiring Defendants to arrange for an examination and a plan of treatment for his medical condition by a qualified specialist and to carry out such plan of treatment. (*See* Doc. 59.)

Generally, a party seeking a temporary restraining order or a preliminary injunction "must show (a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 405-06 (2d Cir. 2011) (internal quotation marks omitted). A higher standard applies where, as here, the party seeks a mandatory injunction, *i.e.*, "one that alter[s] the status quo by commanding some positive act." *Rush v. Fischer*, No. 09-CV-9918, 2011 WL 6747392, at *2 (S.D.N.Y. Dec. 23, 2011) (alteration in original) (internal quotation marks omitted); *accord Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 405-06 (2d Cir. 2011).

19

In those cases, the party seeking the injunction must demonstrate a "'clear' or 'substantial' likelihood of success." *Griffin v. Alexander*, 466 F. App'x 26, 28 (2d Cir. 2012) (summary order) (quoting *Jolly v. Coughlin*, 76 F.3d 468, 473 (2d Cir. 1996)).

Plaintiff has, at this stage, failed to satisfy this burden. From Plaintiff's motion papers and the accompanying Declaration and exhibits, it appears that Defendants currently are treating, and throughout his incarceration have treated, Plaintiff's medical condition. Plaintiff may disagree with the decisions that the medical care providers have made about the medicines that he is or has been taking, the pace in scheduling diagnostic tests, or the manner in which they responded to his grievances. These disagreements, however, generally "implicate medical judgments" by the practitioners, and likely are insufficient to support Plaintiff's Eighth Amendment claim of deliberate indifference to medical care. *Sonds*, 151 F. Supp. 2d at 312; *see, e.g.*, *Hodge v. Wladyslaw*, No. 10-CV-428, 2012 WL 701150, at *2 (S.D.N.Y. Mar. 6, 2012) (adopting magistrate judge's recommendation to deny motion for preliminary injunction where prisoner was receiving medical treatment throughout his incarceration and thus was not likely to succeed on merits of deliberate indifference claim); *Wheeler-Whichard v. Canfield*, No. 10-CV-358, 2011 WL 1225564, at *2 (W.D.N.Y. Mar. 24, 2011) (denying motion for reconsideration on prisoner's motion for temporary restraining order and preliminary injunction where he failed to demonstrate entitlement to such relief because his allegations "[we]re based primarily on [his] disagreement with the scope and type of medical care and treatment he has received for his complaints of pain") (second alteration in original) (internal quotation marks omitted).[6]

---

[6] Moreover, while I recognize that unnecessary substantial pain constitutes irreparable harm, the records supplied by both sides do not indicate that Defendants are failing to treat a condition that will cause Plaintiff irreparable harm should the Motion be denied.

Because I find that Plaintiff is not likely to succeed on the merits, his Motion for Preliminary Injunction and Temporary Restraining Order is denied. The Court orders the remaining State Defendants' counsel to continue to communicate with the relevant officials at Great Meadow to ensure that they continue to monitor Plaintiff and provide adequate attention and care to his medical needs.

## III.   **CONCLUSION**

For the foregoing reasons, Plaintiff's Motion to Strike is DENIED. Defendants' Motions to Dismiss as to Rodas, Bem, Wright, Grinbergs, and Valerian are GRANTED. The Motion to Dismiss as to the remaining State Defendants – Oakes, Felker, Silverberg, Karandy, and Collins – is DENIED. Plaintiff's Motion for Preliminary Injunction and Temporary Restraining Order is DENIED, and Plaintiff's request for counsel is DENIED without prejudice to renewal in the Northern District. This case is hereby transferred to the United States District Court for the Northern District of New York. 28 U.S.C. § 1404(a). The Clerk of Court is respectfully directed to terminate the pending Motions, (Docs. 19, 38, 45, 59), transfer this case to the Northern District, and close the case.

**SO ORDERED.**

Dated: September 21, 2012
      White Plains, New York

                                      CATHY SEIBEL, U.S.D.J.